David J. WILLIAMS, et al., Plaintiffs

v.

**PROVIDENT INVESTMENT COUNSEL, INC., Defendant–Counterclaimant/Third–Party**

v.

**Midwest Continental Company, et al., Third–Party Defendants,**

**No. 3:02CV7548.**

United States District Court, N.D. Ohio, Western Division.

Aug. 15, 2003.

Jeffrey S. Creamer, Robert A. Koenig, Shumaker, Loop & Kendrick, Toledo, OH, for Plaintiffs.

Bradley S. Pauley, Paul, Hastings, Janofsky & Walker, LLP, Jamie Broder, Paul, Hastings, Janofsky & Walker, Steven Allison, Paul, Hastings, Janofsky & Walker, LLP, Los Angeles, CA, Anastasia K. Hanson, Spengler Nathanson, Theodore M. Rowen, Spengler Nathanson, Toledo, OH, John J. McHugh, III, McHugh, DeNune & McCarthy, Sylvania, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a suit by the trustees of the Toledo Area Sheet Metal Workers Pension Plan and Trust (the "Plan") to recover monies allegedly lost through the failure of the defendant Provident Investment Counsel, Inc. ("Provident") to fulfill its fiduciary duties as the Plan's investment manager. Provident, contending that the other fiduciaries of the Plan are also liable for any alleged losses, has filed a counterclaim against the trustees and a third-party complaint against the trustees' investment consultants, Midwest Continental Company ("Midwest") and Jeffrey Barefoot.

Pending are: 1) the trustees' and third-party defendants' motions to dismiss Provident's counterclaim and third-party complaint for contribution; 2) Provident's motion for leave to file an amended answer, counterclaim, and third-party complaint; and 3) the trustee's motion to strike certain of Provident's affirmative defenses provided in its original answer. This court has jurisdiction pursuant to 29 U.S.C. § 1331.

For the reasons that follow, the trustees' and third-party defendants' motions to dismiss shall be granted, Provident's motion to amend shall be denied, and the trustees' motion to strike shall be granted in part and denied in part.

## BACKGROUND

From 1993 to March, 2001, Provident served as the Plan's investment manager. By doing so, Provident agreed to be bound by the Plan's *Statement of Investment Goals and Objectives,* which included the Plan's Investment Policy Guidelines (the "Guidelines"). Those Guidelines provided, in pertinent part:

No more than five percent (5%) of the equity issues can be invested in any one (1) company. No more than ten percent (10%) of the equity issues can be invested in any one (1) industry. These measures shall be initially applied at cost. The equity issues of any single company shall be allowed to rise to 7% at market. The equity issues concentrated in a single industry shall be allowed to rise to 25% at market.

Complt. at ¶ 8.

Plaintiffs allege that at various times between 1996 and 2000, Provident purchased investments for the Plan in violation of the Guidelines, costing the Plan beneficiaries millions of dollars. In November, 2002, the trustees initiated this civil action claiming Provident breached its fiduciary duties as prescribed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*[1]

Provident does not dispute that it was bound by the Guidelines or that the Guide-

---

**1.** Specifically, plaintiffs cite to ERISA §§ 404 and 409, 29 U.S.C. §§ 1104 and 1109. Under § 1104(a), a "fiduciary shall discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries and—
 (A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and

lines were violated. Provident argues, however, that it was unable to monitor the Plan's investments because of the trustees' decision, made contrary to advice from Provident, to invest the Plan's assets in a "wrap fee" program recommended by Midwest and Barefoot. According to Provident, this program prevented Provident's automatic monitoring of the Plan's portfolio for compliance with the Guidelines. Instead, the wrap fee arrangement compelled Provident to monitor the Plan's account manually on a best efforts basis, generally at the end of each quarter. Doc. 10 at ¶ 49.

Even though Provident denies liability, it nevertheless claims that the other fiduciaries of the Plan—the trustees, Midwest and Barefoot—are jointly liable if Provident is found to have breached its fiduciary duties. In its amended answer, Provident also alleges a separate claim for breach of fiduciary duties against the trustees and Midwest and Barefoot. Provident alleges that they:

(i) failed to discharge their affirmative fiduciary duties to the Plan to prevent the Plan from being harmed; (ii) had knowledge of the other alleged breaches of fiduciary duty and failed to make

> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter . . . .
> Under § 409,

reasonable efforts to remedy those breaches; (iii) participated knowingly in the acts and omissions that constituted the alleged breaches; and (iv) breached the responsibilities, obligations, and duties that they had as fiduciaries.

Amended Answer at ¶ 61.

The trustees, Midwest and Barefoot seek dismissal of Provident's counterclaim on the basis that there is no contribution among ERISA fiduciaries. Plaintiffs and third-party defendants also oppose Provident's motion to amend its answer, arguing that Provident, as a former, rather than a current fiduciary, is without standing to bring a counterclaim for breach of fiduciary duty. The trustees also move to strike certain affirmative defenses from Provident's original answer.

## DISCUSSION

### I. Provident's Counterclaim for Contribution

#### A. Parties' Arguments

Although the parties dispute whose position is the prevailing view in the federal courts, the parties agree that there is no binding authority from the Supreme Court or the Sixth Circuit that determines the outcome of this case.[2]

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

**2.** Provident argues, however, that the Sixth Circuit is "leaning toward" allowing contribution among co-fiduciaries. Doc. 52 at 4 (citing *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 485 (6th Cir.2001) ("If the appel-

Plaintiffs and third-party defendants argue that Provident's counterclaim for contribution must be dismissed because contribution among co-fiduciaries cannot be found in or implied from the terms of ERISA. Therefore, because ERISA's remedial provisions are fully integrated and comprehensive, courts should not judicially create a contribution remedy.

Provident argues that a claim for contribution does not conflict with ERISA's enforcement scheme and that the statutory language, underlying purpose, and legislative history of ERISA recognize that more than one fiduciary can be held liable for the same loss. Provident further argues that Congress intended courts to apply the rules of common law trusts and to allow the development of equitable remedies when interpreting ERISA—both of which support contribution among co-fiduciaries. These principles are especially important in this case, defendant argues, because it was plaintiff and third-party defendants who invested the Plan's funds in a wrap fee program, against the advice of Provident.

## B. Standard of Review

No complaint shall be dismissed unless the plaintiff has failed to allege facts in support of plaintiff's claim that, construed in plaintiff's favor, would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County,* 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229,

81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## C. Analysis

Two Judges of this District have concluded that contribution is not available in favor of a party that has breached its fiduciary duties to an ERISA plan against other fiduciaries. *Roberts v. Taussig,* 39 F.Supp.2d 1010, 1011–12 (N.D.Ohio 1999) (Economus, J.); *Daniels v. National Employee Ben. Services, Inc.,* 877 F.Supp. 1067, 1073–74 (N.D.Ohio 1995) (Aldrich, J.). The Sixth Circuit has not addressed the question of whether an ERISA fiduciary may sue another fiduciary for contribution. The other circuits to have done so are split on the issue. *Compare Kim v. Fujikawa,* 871 F.2d 1427, 1432–33 (9th Cir. 1989) (no right of contribution among ERISA fiduciaries) *with Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 15–18 (2d Cir.1991) (finding right to contribution under ERISA) *and Alton Memorial Hospital v. Metropolitan Life Ins. Co.,* 656 F.2d 245, 250 (7th Cir.1981) (same) (dictum).

District courts outside of the Second, Seventh, and Ninth Circuits likewise disagree on this issue. Some trial courts have allowed a right of contribution among ERISA fiduciaries, including *Site–Blauvelt Engrs. Inc. v. First Union Corp.,* 153 F.Supp.2d 707, 709 (E.D.Pa.2001); *Cooper v. Kossan,* 993 F.Supp. 375 (E.D.Va.1998); *Green v. William Mason & Co.,* 976 F.Supp. 298 (D.N.J.1997); *Duncan v. San-*

lants can claim a right to contribution here ... that right exists because both settling and

non-settling defendants share common liability under ERISA.")).

*taniello,* 900 F.Supp. 547, 550–51 (D.Mass. 1995); *Maher v. Strachan Shipping Co.,* 817 F.Supp. 43 (E.D.La.1993); *Jones v. Trevor, Stewart, Burton and Jacobsen, Inc.,* 1992 WL 252137 (N.D.Ga.1992).

Other district courts have, however, like the two Judges from this District, held that there is no right of contribution among ERISA fiduciaries. *Center Physicians Inc. v. Painewebber Group Inc.,* 1996 WL 622470 (E.D.Mo.1996); *Int'l Bhd. of Painters & Allied Trades Union Pension Fund v. Duval,* 1994 WL 903314 (D.D.C.1994); *Aks v. Southgate Trust Co.,* 1992 WL 401708 (D.Kan.1992); *Schloegel v. Boswell,* 766 F.Supp. 563, 569 (S.D.Miss. 1991); *Physicians HealthChoice v. Trs. of Auto. Employee Benefit Trust,* 764 F.Supp. 1360, 1364 (D.Minn.1991); *Hollingshead v. Burford Equipment Co.,* 747 F.Supp. 1421, 1445 (M.D.Ala.1990); *NARDA, Inc. v. Rhode Island Hosp. Trust National Bank,* 744 F.Supp. 685, 697–98 (D.Md.1990); *Franklin v. Aetna Life Insurance Co.,* 1988 U.S. Dist. LEXIS 10842 (D.S.C.1988); *see also North Carolina Life & Acc. & Health Ins. Guaranty Assn. v. Alcatel,* 876 F.Supp. 748, 756 (E.D.N.C. 1995) (expressing " 'doubts that any claim for contribution should be read into ERISA.' ") (citing *Brock v. Gillikin,* 677 F.Supp. 398, 403 (1987)).

As the foregoing list of citations makes clear, there is no prevailing or controlling view on the issue of contribution among ERISA fiduciaries. There is, though, almost universal acknowledgment that ERISA does not speak to, much less expressly authorize, a right of contribution among ERISA fiduciaries. *See, e.g., Site–Blauvelt,* 153 F.Supp.2d at 709; *Roberts,* 39 F.Supp.2d at 1011.[3]

■ Where a statute is silent, a right to contribution may arise by operation of federal common law. *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 638–39, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

---

**3.** As explained by the court in *Site–Blauvelt,* the courts deciding whether a right to contribution exists under ERISA's federal common law typically use the same analysis:

> The courts that have answered that question in the affirmative all have based their conclusion on similar reasoning. They begin by noting that courts are to be guided by principles of traditional trust law when developing federal common law under ERISA, and that trust law generally includes a right to contribution among fiduciaries. These courts then reason that, because traditional trust law includes contribution, a right to contribution exists under ERISA's federal common law. In contrast, courts that have refused to find a right to contribution or indemnification under ERISA maintain that Congress's silence on the question of contribution and indemnification, in the context of such an expansive and intricately drafted statute like ERISA, indicates an intent to preclude those remedies.

153 F.Supp.2d at 709 (citations omitted).

The decision in *Cooper v. Kossan* provides an additional analysis of the cases:

> The courts that have determined that no such right exists reason that ERISA provides remedies only for beneficiaries of a plan, or for a plan itself, to recover lost monies from the fiduciaries who caused the losses, and that ERISA does not provide relief for the fiduciaries themselves. Furthermore, these courts reason that the expansive and detailed nature of ERISA reflects that it was a complete expression of Congress' intent and that Congress did not intend to authorize other remedies that it did not expressly incorporate.
>
> \* \* \* \* \* \*
>
> [Courts allowing a claim for contribution] interpret Congress' silence on the issue of contribution as a reflection that it was focusing on " 'providing remedies to plan beneficiaries and participants and was content to allow gaps to be filled by the courts applying trust law.' " These courts also state that disallowing claims for contribution will frustrate ERISA's purpose of deterring plan abuse by allowing breaching fiduciaries to escape the consequences of their actions.

993 F.Supp. at 376–77 (citations omitted).

The instances in which the Supreme Court has recognized. the "need and authority ... to formulate what has come to be known as 'federal common law' ... are 'few and restricted.'" *Texas Indus.*, 451 U.S. at 640, 101 S.Ct. 2061 (quoting *Wheeldin v. Wheeler*, 373 U.S. 647, 651, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963)). These instances "fall into essentially two categories: [1] those in which a federal rule of decision is necessary to protect uniquely federal interests, and [2] those in which Congress has given the courts the power to develop substantive law." *Id.* (citations omitted).

■ It· is undisputed that Congress wanted federal courts to "develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). This is, however, not a boundless grant of authority. The development of federal common law under ERISA is appropriate only when "necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Bollman Hat Co. v. Root*, 112 F.3d 113, 118 (3d Cir.1997).

■ In light of the conclusions reached by my colleagues in this District and other courts and commentators, I conclude that Congress did not intend the courts to create a right of contribution among ERISA co-fiduciaries. Nothing in the language, structure, or stated purpose of ERISA suggests that Congress has given courts the power to develop substantive law in this area.

■ ERISA is comprised of a comprehensive system of procedures for enforcement. Congress has provided that ERISA "shall supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. § 1144(a). When Congress enacts a comprehensive legislative scheme, including an integrated system of enforcement, "[t]he presumption that a remedy was deliberately omitted from a statute is strongest." *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 90–91, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981).

This must be true of ERISA. As the Supreme Court explained in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985):

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute."

473 U.S. at 146, 105 S.Ct. 3085 (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)).

It is highly unlikely that Congress was unaware that the issue of contribution among fiduciaries would arise under ERISA. Congress, moreover, was, in all likelihood, aware that well-established and well-known principles of conventional trust law allow a breaching fiduciary to recover for contribution from other fiduciaries. Congress, nevertheless, did not include a provision for contribution among fiduciaries in ERISA.

The Supreme Court stated in *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), that courts should be unwilling to infer causes of ac-

tion in the ERISA context, "since that statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.' " 508 U.S. at 254, 113 S.Ct. 2063 (quoting *Russell*, 473 U.S. at 146–47, 105 S.Ct. 3085); *see also Chemung* 939 F.2d at 19 ("Simply stated, if Congress had intended to include a right of contribution and indemnification it would have done so.") (Altimari, J. concurring in part and dissenting in part).

ERISA's underlying purpose also does not support a finding that a claim of contribution should be created among fiduciaries. The policy underlying ERISA is "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

As the Sixth Circuit explained in *Corbin v. Blankenburg*, 39 F.3d 650 (6th Cir.1994), Congress wanted to ensure that workers with vested pension rights received what they had been promised; to this end "Congress invoked the common law of trusts to define the general scope of [plan fiduciaries'] authority and responsibility." *Id.* at 654 (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985)).

Thus, traditional trust law was adopted to make sure that plan *participants* received their promised share. Allowing Provident to share liability for its breach of fiduciary duty would not protect the interests of the Plan participants.

Therefore, ERISA's comprehensive enforcement scheme and its stated purpose support the reasoning of the Ninth Circuit's decision in *Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir.1989). ERISA's enforcement scheme was crafted with evident care, and I cannot conclude "that Congress implicitly intended to allow a cause of action for contribution under ERISA." *Id.* at 1432. Expanding ERISA to provide for contribution is inappropriate because Congress intended to regulate fiduciaries for the protection and benefit of plans. There is no indication that Congress "was concerned with softening the blow on joint wrongdoers." *Id.* at 1433.

Provident stresses that ERISA is rooted in trust law and that courts may develop equitable remedies in interpreting ERISA. As my colleague explained in *Roberts*, these arguments ignore the pervasive effect of ERISA on state law and the congressional intent in enacting ERISA's comprehensive enforcement scheme. 39 F.Supp.2d at 1012; *see also Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Securities, Inc.*, 823 F.Supp. 1191 (E.D.Pa.1993) ("Only those portions of trust law which complement or are necessary to explain ERISA's statutory scheme can be spliced into the statute as federal common law."); *NARDA*, 744 F.Supp. at 696 ("ERISA carefully details the duties and liabilities of fiduciaries. It is evident, both from the language of its provisions and from the legislative history, that the common law of trusts was drawn upon freely and incorporated to the extent desired. Thus, when some clearly established aspect of common law is not incorporated, the omission would appear intended.").

In addition to the reasoning of the courts, the authors of a recent law review article, in a comprehensive consideration of this question, encompassing a detailed assessment of ERISA's legislative history and congressional intent, the pertinent policies, and the rationales advanced by both courts and other commentators, conclude

that no right of contribution arises, or should arise, under ERISA. George L. Flint, Jr. & Philip W. Moore, Jr., ERISA: A Co-Fiduciary Has No Right To Contribution and Indemnity, 48 S.D. L.Rev. 7 (2003).

According to the authors, the statutory language and the intent of ERISA's drafters demonstrate that courts are not authorized to allow contribution or indemnity by one fiduciary against another. *Id.* at 48. Relying on the Anglo–American jurisprudence of contribution and indemnity claims, the authors argue that because ERISA provides that no court shall enforce an agreement relieving a fiduciary of liability, courts are not entitled to infer a congressional intent concerning contribution. *Id.* (citing 29 U.S.C. § 1110(a)). That is, ERISA's provision expressly barring liability-shifting agreements demonstrates a legislative intent not to infer contribution claims—that are without an agreement—into the statutory scheme.

The authors also summarize the difference between ERISA and traditional trust law, concluding that a court cannot import a traditional trust law rule, like contribution, into the ERISA context without first insuring that such comports with the remainder of ERISA's treatment of fiduciaries. *Id.* at 29; *see also id.* at 41 (finding that the Second Circuit's decision in *Che-mung* using traditional trust law to create federal common law under ERISA "overstates the legislative history, which clearly labels traditional trust law as a source, but requires modification to fit ERISA").[4]

This approach is most likely to create finality and predictability in the law of ERISA fiduciary liability. Embarking on the course of ad hoc creation of a federal common law in this area will lead, in all likelihood, to less predictability, and to more, rather than fewer lawsuits with attendant delay, uncertainty, and expense. Each of those circumstances is to be avoided where an ERISA plan seeks to recover for a fiduciary's failure to perform its obligations. Plans, especially plans that have incurred large losses as a result of a fiduciary's nonperformance, should not endure the additional expense involved in participating in cross-claims and third-party actions.

Plans should, moreover, be able to do that which the trustees have done here—namely, choose, if they believe they are able to do so, among various targets. While this opportunity may well give rise to collusiveness, as Provident suggests, it also enables greater efficiency and enhances the likelihood of more prompt recovery against the party that, in the plan's eyes, appears either most culpable or judgment-worthy, or both.

---

**4.** Provident argues that this law review article is "unnecessary," its arguments are "no more solid than a house of cards," and by relying on this article, "the Court evidences an unwillingness to consider both sides of the issue." Doc. 58 at 2, 3, 5; *see also id.* at 1. ("Relying on the opinions in one law review article by an unknown professor, published in a less-than-first-tier publication, trivializes the importance of legal precedent and is an inappropriate basis for a decision by the Court.").

The article's conclusion—although slightly different from the cases cited above—is only more evidence demonstrating that Congress could not have intended the courts to create a claim for contribution among fiduciaries.

The article is not authority. It merely presents another cogent argument for why courts should not judicially create a right of contribution among co-fiduciaries.

Provident's ad hominem remarks about the authors and publication are, moreover, as inappropriate as its suggestion that this court, by considering the article and its authors' views, has closed its eyes to the issues and arguments, or has abdicated its duty to come to an independent view of the merits. The article does that which law review commentators should—and often fail—to do: namely, provide lawyers and the courts with the benefit of impartial and thoughtful assessment of a current and important issue.

Additionally, this approach makes clear to fiduciaries the risks that can arise if they accept engagements where the risks are perceptible—as Provident alleges they were here. To the extent that it informed the trustees and Midwest about the problems with a wrap fee account, it clearly was aware of those risks itself. At that point, it had a choice: decline the engagement or assume the risk, including the risk of the instant lawsuit, created by its inability to fulfill its duties under the Plan.[5]

Finally, contrary to Provident's contention, the other fiduciaries are not "absolutely immune" from liability. Doc. 36 at 2. To the extent that the Plan's beneficiaries view the route taken by the trustees as less than optimal, they retain the ability to bring their own action against the trustees or Midwest and Barefoot. In the meantime, direct action by the trustees against Provident can proceed unencumbered and undelayed toward recovery.

Plaintiffs' and third-party defendants' motions to dismiss Provident's counterclaim for contribution shall therefore be granted.

## II. Provident's Motion to Amend

Provident moves to amend its Answer, Counterclaims and Third–Party Complaint ("Answer") to add a cause of action for breach of fiduciary duty against counter-defendants trustees and third-party defendants Midwest and Barefoot. Under ERISA, a civil cause of action may be brought by "a fiduciary for appropriate relief under Section 1109 ...." U.S.C. § 1132(a)(2).[6] Provident also moves to amend its Answer to incorporate into its pleading recently produced documents that it contends are relevant to its claims.

### A. Counterclaim for Breach of Fiduciary Duties

■ The trustees, Midwest, and Barefoot argue that Provident's motion to amend should be denied as futile. Plaintiffs and third-party defendants argue that because the trustees terminated the relationship between Provident and the Plan, Provident is no longer a fiduciary, and, therefore, does not have standing to bring a claim for breach of fiduciary duty under § 1132(a).

Thus, the issue is whether a former fiduciary has standing to bring a breach of fiduciary duty claim against co-fiduciaries. Like the contribution issue, this question has not been decided by the Supreme Court or the Sixth Circuit.[7]

---

**5.** This approach, as noted by the law review article's authors, also promotes the purchase of insurance by fiduciaries. Such, in turn, adds to the protections available to plans and their members in the event of a loss for which a fiduciary is culpable. Flint, Jr. et al., *supra* at 49–50.

**6.** Specifically, under ERISA § 502(a), 29 U.S.C. § 1332(a), a civil action under ERISA may be brought:
 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provi-

sions of this subchapter or the terms of the plan; ...

**7.** Plaintiffs and third-party defendants rely on an affidavit by Barefoot and exhibits attached to the affidavit to prove that Provident is no longer a fiduciary of the Plan. Provident argues that the affidavit is evidence outside of the pleadings, and, therefore, the court should strike and refuse to consider it. Technically, Provident's procedural objection is correct. The crucial question, however, is whether Provident, as a former fiduciary, can sue for breach of fiduciary duty. Provident does not dispute the accuracy of the trustees' and third-party defendants' allegation that Provident is a former, and not a current, fiduciary. I therefore see no reason why this question should not be addressed at this stage of the litigation.

Amendment of a party's pleading is controlled by Fed.R.Civ.P. 15(a), which provides that leave to amend a pleading "shall be freely given when justice so requires." Generally, courts liberally construe motions for leave to file an amended pleading. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). As the Supreme Court stated in *Foman,*

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendments, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id.* at 182, 83 S.Ct. 227.

Leave to amend may not be granted, however, when the amendment would be futile. *Frank v. D'Ambrosi,* 4 F.3d 1378, 1386 (6th Cir.1993) (citing *Thiokol Corp. v. Dep't of Treasury, State of Mich., Rev. Div.,* 987 F.2d 376, 383 (6th Cir.1993); *Marx v. Centran Corp.,* 747 F.2d 1536, 1550 (6th Cir.1984)).

Provident argues that its proposed amendment is based on *Roberts v. Taus-* *sig,* 39 F.Supp.2d 1010 (N.D.Ohio 1999). As noted above, the court in *Roberts* found no right of contribution among co-fiduciaries. The court did, however, uphold the defendant-fiduciaries counterclaim for breach of fiduciary duty.

Provident has examined the pleadings of *Roberts* and determined that less than two months before the plaintiffs in *Roberts* filed suit, the named defendants ceased to be fiduciaries of the plaintiffs' plan. Therefore, at the time defendants filed their counterclaims, they were former fiduciaries. *See* Doc. 53 at 6.

The court in *Roberts* did not, however, discuss whether the defendant-fiduciary was a current or former fiduciary, and, therefore, did not address the standing issue. The court simply stated that the counterclaim for breach of fiduciary duty was a "properly plead claim ... under 29 U.S.C. § 1105(a)." [8]

Other courts that have addressed whether a former fiduciary has standing to bring a claim for breach of fiduciary duty, have found, except in cases of substitution, that a former fiduciary has no right under ERISA to sue on behalf of the plan to recover for the plan's losses. *See e.g., Chemung,* 939 F.2d at 14–15 ("There is no indication of any legislative intent to grant a former fiduciary a continuing right to sue on behalf of the plan ... and [defendant's] claim falls for lack of standing."); *Blackmar v. Lichtenstein,* 603 F.2d 1306 (8th Cir.1979); *see also Miller v. Retirement Funding Corp.,* 953 F.Supp. 180, 182

---

**8.** Under ERISA § 405(a), 29 U.S.C. § 1105(a), a fiduciary may be liable for a breach of fiduciary responsibility of another fiduciary,

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in this administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

(W.D.Mich.1996) ("Once the Plan was terminated, plaintiff's status necessarily changed from Trustee to former Trustee. As former Trustee, plaintiff lacks standing to assert ERISA claims for breaches of fiduciary duties.").

As a matter of statutory construction, plaintiffs and third-party defendants have the better argument. Section 1132(a) specifies those who may bring actions under ERISA: 1) a participant or beneficiary, 2) the Secretary of Labor, and 3) a fiduciary. A former fiduciary is not one of the listed parties. Thus, a former fiduciary has no right to sue on behalf of the plan to recover for the plan's losses. The former fiduciary "no longer has an interest in protecting a plan to which it is now a complete stranger." *Chemung*, 939 F.2d at 15.

Provident's motion to amend its Answer to add a claim for breach of fiduciary duty is therefore denied as futile. It would not have standing to assert such a claim.[9]

### B. "Service Contracts"

In its amended Answer, Provident also attaches copies of service contracts between Midwest and the Plan. Provident alleges that the contracts demonstrate that others, in addition to Provident, were responsible for monitoring the Plan's compliance with the Guidelines. Provident argues that the contracts are "unquestionably relevant to Provident's counterclaims for contribution and breach of fiduciary duty." Doc. 53 at 10.

To the extent these documents are attached to support Provident's counterclaims for contribution and breach of fidu-

ciary duty, Provident's motion to amend shall be denied. There is no point to alleging more facts to support invalid claims.

Provident also argues that any ruling denying its motion to amend prior to a final determination by the Sixth Circuit on the contribution issue could "ultimately result in unnecessary procedural hurdles for both parties, including the necessity of future amendments." Doc. 53 at 11. If the Sixth Circuit subsequently decides that ERISA co-fiduciaries have the right of contribution or that former fiduciaries have standing to allege a breach of fiduciary duty claim, Provident will certainly be granted leave to amend its complaint.

### III. Motion to Strike Provident's Affirmative Defenses

Plaintiffs contend that each of the following affirmative defenses asserted by Provident should be stricken as legally insufficient: 1) waiver; 2) ratification and consent; 3) compliance with prudent person standard of care; 4) estoppel; 5) failure to mitigate damages; 6) unclean hands; 7) contributory negligence of plaintiffs and their agents; 8) assumption of risk; and 9) laches.

### A. Standard of Review

Pursuant to Fed.R.Civ.P. 8(c), a party must set forth affirmative defenses in a responsive pleading. Under Fed.R.Civ.P. 12(f), "the court may order stricken from any pleading any insufficient defense."

An affirmative defense will be held insufficient as a matter of law only if it appears that the defendant cannot suc-

---

**9.** I am mindful of the perceived "unfairness" in this decision. As Provident points out, of the courts addressing both issues, no court has denied a former fiduciary the right to bring a cause of action for breach of fiduciary duty *and* the right to seek contribution from a co-fiduciary. Doc. 53 at 9.

I am convinced, however, that this contention should be addressed to Congress. As explained above, I cannot conclude that the directive to develop a federal common law under ERISA includes the right to infer a common law right of contribution when the language, purpose, and structure of the statute lead to a contrary intent.

ceed under any set of facts which it could prove. *EEOC v. First Nat'l Bank,* 614 F.2d 1004, 1008 (5th Cir.1980) (citing 2A Moore's Federal Practice 8.27(3) (2d Ed.1979)). Courts generally disfavor motions to strike affirmative defenses because they potentially serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989). As the Sixth Circuit explained in *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir.1953):

> Partly because of the practical difficulty of deciding cases without a factual record, it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice. The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.

Courts have developed a three-part test in examining affirmative defenses subject to a motion to strike:

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge—in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.

*Renalds v. S.R.G. Restaurant Group, Chicago, LLC,* 119 F.Supp.2d 800, 802 (N.D.Ill.2000) (citing *Heller,* 883 F.2d at 1294).

## B. Estoppel, Waiver, and Ratification and Consent

■ Provident contends that because the trustees knew about the Guideline violations since 1996, they ratified the conduct, waived the right to object, and are estopped from seeking to hold Provident responsible for the portfolio's drop in value. Doc. 33 at 8. These defenses are asserted, according to Provident, to prove the "extent Provident's fiduciary duties were modified or relieved as a result of the Trustees' conduct." Doc. 33 at 9.

Accepting Provident's allegations that plaintiffs approved of the Guideline deviations, the issue is therefore whether the trustees had the ability to alter Provident's duties under the Plan documents, and, if so, whether this is a legally sufficient defense to plaintiffs' breach of fiduciary duty claim.

Provident provides cases where the defenses of ratification and waiver were bases for granting summary judgment in favor of the defendant-fiduciary. In *McManus & Pellouchoud, Inc. Employees' Profit Sharing Trust v. L.F. Rothschild, Unterberg, Towbin,* 1989 WL 100103, at *1 (N.D.Ill. Aug. 23, 1989), an employee benefit plan sued its investment advisor for breach of fiduciary duty. Plaintiffs alleged that high-tech stocks were purchased without the trustees being affirmatively told that these stocks involved a higher degree of risk. *Id.* at *2.

Defendant argued that because the plaintiff had knowledge of such activity for many years prior to filing of the suit, the plaintiff ratified the investment decisions and therefore waived its right to object. As evidence, defendant asserted that the trustees were given monthly reports and numerous warnings informing them that the account was not appropriately invested. *Id.* at *3.

In granting defendant's motion for summary judgment, the court reasoned:

> There is no doubt that [trustee] previously approved of the conduct about which he now complains. Even the stringent duties imposed by ERISA do not create broker liability where the

broker acts with the approval and at the discretion of a plan Trustee, especially when the Trustee is a sophisticated investor who owns a majority interest in the Trust. [Trustee] knew [investment advisor] was deviating from the state objectives of the Trust and ratified the deviation. In so doing, the Trustees were the 'authors of their own losses.' *Id.* at *4; (citing *Schetter v. Prudential–Bache Securities, Inc.,* 695 F.Supp. 1077, 1083 (E.D.Cal.1988) ("Plaintiffs ratified the transactions in the account.... Plaintiffs are estopped to complain of the transactions in the account.")).

Provident argues that it should be allowed the same opportunity as the defendant in *McManus* to prove that plaintiffs ratified the Guideline deviations.

The trustees' knowledge or approval of the Guideline deviations provide, however, no defense to Provident in this ERISA § 404(a)(1)(D) case. Under that section, ERISA requires a fiduciary to "discharge his duties ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." 29 U.S.C. § 1104(a)(1)(D). Allowing Provident to avoid the congressional mandate that it act in accordance with the Plan documents because of the trustees' alleged knowledge and approval of the deviations from the Guideline would allow oral modification of the Plan documents. As the Sixth Circuit has concluded: "Congress, in passing ERISA, did not intend that participants in employee benefit plans should be left to the uncertainties of oral communications in finding out precisely what rights they were given under their plan." *Musto v. American General Corp.,* 861 F.2d 897, 909–910 (6th Cir.1988); *see also Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 58 (4th Cir.1992) ("Use of estoppel principles to effect a modification of a written employee benefit plan would conflict with 'ERISA's

emphatic preference for written agreements.' ... [A]ny modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing. Oral or informal written modifications to a plan, ... are of no effect.").

Allowing these defenses would, moreover, permit the trustees to waive the right of beneficiaries to strict adherence to the Plan documents. ERISA's requirements are designed "to protect ... the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). *See e.g., Dardaganis v. Grace Capital, Inc.,* 889 F.2d 1237, 1241 (2d Cir.1989) ("Unlike ordinary breach of contract actions in New York, in which the right to strict adherence may be waived by failure to object to performance that deviates form the written document, the trustees of an ERISA plan cannot waive the right of the beneficiaries to have fiduciaries comply with section 1104(a)(1)(D).").

Thus, plaintiffs' motion to strike Provident's affirmative defenses of estoppel, waiver, and ratification and consent shall be granted.

## C. Compliance with the Prudent Person Standard of Care

Plaintiffs claim that Provident's defense of complying with a "prudent person" standard of care is not a defense to liability under ERISA § 404(a)(1)(D). Adhering to the separate "care, skill, prudence, and diligence" requirement under ERISA § 404(a)(1)(B), according to plaintiffs, does not relieve Provident of its duty to also comply with § 404(a)(1)(D), which requires fiduciaries to act in accordance with plan documents.

To support their argument, plaintiffs rely on *Dardaganis,* where the Second Circuit concluded:

Subdivision (B) of section 1104(a)(1) imposes a general duty to act with "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). Under [investment manager's] interpretation, this duty to act with prudence would be the only duty imposed by subsection 1104(a)(1). But subdivisions (A), (C), and (D) impose more specific duties, such as acting for the exclusive purpose of providing benefits to participants and beneficiaries, *id.* § 1104(a)(1)(A), acting so as to diversify plan investments in order to minimize risk, *id.* § 1104(a)(1)(C), and acting in accordance with plan documents, *id.* § 1104(a)(1)(D). A fiduciary's failure to meet these specific requirements of section § 1104(a)(1) is not merely evidence of imprudent action but may, in itself, be a basis for liability under section 1109. 889 F.2d at 1241.

Provident argues that plaintiffs' motion to strike this defense must fail because ERISA does not create a strict liability standard for complying with plan documents. According to Provident, a fiduciary can avoid liability under ERISA for not following plan documents if it would have been imprudent to do so as long as it discharged its fiduciary duties "with the care, skill, prudence, and diligence under the circumstances then prevailing." § 1104(a)(1)(B). Provident relies on the decision in *First Nat'l Bank of Chicago v. Retirement Trust for Employees of Standard Oil Co.,* 1991 WL 285269 (N.D.Ill. 1991), which criticized *Dardaganis* by stating:

> To the extent that *Dardaganis* holds, rather than says, that failure to follow documents causes a per se violation under § 404(a)(1)(D) and creates liability without regard to the issue of prudence (and thereby without a possible prudence defense), this Court declines to follow the Second Circuit's rationale. All of the § 404(a) subsections should be read together; § 404(a)(1)(D) explicitly includes a need for consistency with other sections. Consistency does not make the subsections other than (B) meaningless. It simply requires a coherent rule which should be applied with enough flexibility to avoid imprudence, yet with enough certainty for confident participation in funds. In addition, the (a) subtitle, prudent man standard of care, covers all of the § 404(a) subsections.

*Id.* at *3.

Relying on this reasoning, Provident argues that it must be given an opportunity to prove that it acted prudently in carrying out its fiduciary duties to the Plan.

Contrary to Provident's argument, however, § 404(a)(1) sets out four distinct fiduciary duties. Plaintiffs have not accused Provident of violating subsection (B). Instead, Provident is being sued for violation of subsection (D), which requires a fiduciary to "act in accordance with the documents and instruments governing the plan." The only limitation on this duty is that the plan documents provide standards of conduct only "insofar as such documents and instruments are consistent with" ERISA. § 404(a)(1)(D). Because the provisions of plan documents differ from plan to plan, the effect of this rule is to impose fiduciary-like duties that vary according to the terms of the governing plan documents. Thus, a defense that the fiduciary was complying with the prudent person standard is irrelevant to a § 404(a)(1)(D) claim—the standard is the plan documents. Therefore, Provident's defense is legally insufficient.

Plaintiffs' motion to strike Provident's affirmative defense of following the prudent person standard shall therefore be granted.

**D. Failure to Mitigate Damages, Unclean Hands, Contributory Negligence, Laches, and Assumption of the Risk**

 Plaintiffs claim that each of these defenses is essentially an allegation that the trustees were negligent in enforcing the rights of the Plan beneficiaries, which is irrelevant to whether Provident is liable for its own claim of breach of fiduciary duty. Plaintiffs therefore argue that these defenses are futile and should be stricken.

Provident argues that because the trustees seek the equitable remedy of restitution, Provident should be allowed to assert equitable defenses. Provident provides cases where equitable defenses were allowed under ERISA. *See e.g., Fotta v. Trustees of United Mine Workers of Am. Health & Retirement Fund of 1974*, 165 F.3d 209, 214 (3d Cir.1998) ("Because the remedy we recognize here is equitable in nature, its award involves an exercise of judicial discretion. And, like other equitable remedies, it is subject to equitable defenses such as laches, . . ."); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir.1985) (applying the unclean hands doctrine).

Plaintiffs in this case, however, are seeking a legal remedy under ERISA § 409. *See Donovan v. Robbins*, 579 F.Supp. 817, 820 (N.D.Ill.1984) ("Section 409 of ERISA, 29 U.S.C. § 1109, authorizes legal relief for an appropriate party under appropriate circumstances in an ERISA action."). More importantly, any recovery under § 409 goes to the Plan, not the trustees, and the Plan's participants should not be punished for the acts of the trustees. Thus, Provident is not allowed to reduce or eliminate its liability to the Plan on the defense that other fiduciaries breached their fiduciary duties.

Provident argues, however, that it should be able to determine whether the trustees are the principal beneficiaries under the Plan. If so, Provident contends, they should not reap a potential windfall where the Plan's losses were caused by their own actions, and they alone, rather than other beneficiaries, would benefit from this lawsuit.

I agree that Provident should be able to proceed with these claims, but that discovery shall be limited, at least at the outset, to determining the extent to which the trustee-plaintiffs are the sole, or nearly sole or primary Plan beneficiaries. Once that discovery is completed, the trustees may seek summary judgment as to these defenses on the basis, if such is the case, that, though they are beneficiaries, they are not the sole or primary beneficiaries of the Plan.

Plaintiffs' motion to strike these affirmative defenses shall be denied.

**CONCLUSION**

It is there, therefore,

**Ordered that**

1. Plaintiffs' and third-party defendants' motion to dismiss Provident's counterclaim for contribution be, and hereby is, granted.

2. Provident's motion to amend its answer, counterclaim, and third-party complaint be, and hereby is, denied.

3. Plaintiffs' motion to strike Provident's affirmative defenses be, and hereby is, granted in part, and denied in part;

4. Leave granted to Provident to take discovery regarding its defenses of failure to mitigate damages, unclean hands, contributory negligence, laches, and assumption of the risk; such discovery to be limited, pending further order, to the nature and extent of plaintiffs' status as Plan beneficiaries; said discovery to be completed by October 31, 2003; and

5. Plaintiff's motion for summary judgment, if any, regarding remaining affirmative defenses to be filed on or before November 14, 2003; opposition to be filed by December 5, 2003; reply to be filed by December 15, 2003.

**So ordered.**